UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. PACZKOSKI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　　Defendant | CIVIL ACTION NO. 3:13-CV-01775<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM OPINION**

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 14; Doc. 15). For the reasons expressed herein, the Commissioner's decision shall be **AFFIRMED**.

**I.　PROCEDURAL HISTORY**

On July 12, 2010, Plaintiff Michael A. Paczkoski protectively filed an application for SSI based on his alleged impairments beginning September 22, 2009. (Admin. Tr. 87, Doc. 9-3 at 20). Paczkoski's application was initially denied on September 8, 2010. (Admin. Tr. 87, Doc. 9-3 at 20). On November 10, 2010, Paczkoski timely filed a written request for a hearing before an administrative law judge ("ALJ"). *See* 20 CFR § 416.1429, *et seq*. (Admin. Tr. 87, Doc. 9-3 at 20). On October 26, 2011, Paczkoski appeared and testified at a hearing before ALJ Michelle Wolfe in Wilkes-Barre, Pennsylvania. (Admin. Tr. 87, Doc. 9-3 at 20). An impartial vocational

expert ("VE"), Josephine A. Doherty, also appeared and testified at the administrative hearing. (Admin. Tr. 87, Doc. 9-3 at 20). Paczkoski was informed of his right to legal representation; however, he chose to represent himself without the assistance of an attorney. (Admin. Tr. 87, Doc. 9-3 at 20).

On November 10, 2011, the ALJ issued a notice of decision denying Paczkoski's application for SSI. (Admin. Tr. 84-97, Doc. 9-3 at 17-30). Thereafter, Paczkoski was appointed legal counsel. (Admin. Tr. 13, Doc. 9-2 at 14). On January 12, 2012, Paczkoski requested an administrative review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review. (Admin. Tr. 7, Doc. 9-2 at 8). The Appeals Council denied his request for review on May 7, 2013. (Admin. Tr. 1-6, Doc. 9-2 at 2-7). This makes the ALJ's November 10, 2011, decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). 20 C.F.R. § 416.1481. Paczkoski appealed the Commissioner's final decision by filing the instant complaint on June 27, 2013. (Doc. 1). The Commissioner filed an answer to the complaint on August 29, 2013 (Doc. 8), and a transcript of the administrative record. (Doc. 9). This appeal is now fully briefed by the parties and ripe for a decision.[1] (Doc. 10; Doc. 11).

## II.   STANDARD OF REVIEW

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative

---

[1] Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). *See also Arnold v. Colvin*, No. 12-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive SSI payments on the basis of disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

3

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1383c(a)(3)(B); 20 C.F.R. § 416.905(a).

In determining whether a claimant is disabled under the Social Security Act, the Commissioner follows a five-step evaluation process. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920. The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)); 20 C.F.R. § 416.912); *Mason*, 994 F.2d 1058, 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her age, education, work experience and RFC. 20 C.F.R. § 416.912(f); *Mason*, 994 F.2d at 1064.

Before completing step four of this process, the ALJ must also determine the claimant's RFC. 20 C.F.R. § 416.920(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220

4

F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.945(a)(1); Social Security Ruling 96-8p, 1996 WL 374184. In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

### III. THE ALJ'S DECISION

In his November 10, 2011 decision, the ALJ determined that Paczkoski did not have a disability as defined by the Social Security Act. (Admin. Tr. 96, Doc. 9-3). The ALJ proceeded through each step of the five step sequential evaluation process. At step one, the ALJ determined that Paczkoski did not engage in substantial gainful activity between his application date, July 12, 2010, and the date of the ALJ's decision. (Admin. Tr. 89, Doc. 9-3 at 22). At step two, the ALJ determined that Paczkoski had the following severe impairments: intermittent explosive disorder, mood disorder, bipolar disorder, impulsive control disorder, caffeinism, polysubstance abuse, and alcohol dependency. (Admin. Tr. 89, Doc. 9-3 at 22). The ALJ found that Paczkoski's claimed impairment of asthma was medially determinable, but non-severe because Paczkoski never had to go to the emergency room for asthma, used his inhaler on an as needed basis, and smoked "about a pack of cigarettes per day." (Admin. Tr. 89, Doc. 9-3 at 22). The ALJ found Paczkoski's claimed impairment of mild thoracolumbar dextroscoliosis and back pain was medically determinable, but non-severe because there was no evidence that the condition caused Paczkoski any specific limitation in his ability to perform any work-related activities and because he only recently had sought treatment for this condition. (Admin. Tr. 89, Doc. 9-3 at 22). The ALJ also found that Paczkoski had a history of headaches, but that this condition was non-severe because the headaches caused him a minimal degree of limitation and were controlled through the use of medication. (Admin. Tr. 89, Doc. 9-3 at 22). At step three,

the ALJ determined that Paczkoski did not have an impairment, or combination of impairments, that met or medically equaled the severity of any of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1. 20 C.F.R. 416.920(d), 416.925, 416.926. (Admin. Tr. 90, Doc. 9-3 at 23).

Prior to step four, the ALJ determined Paczkoski's residual functioning capacity ("RFC") based on the evidence of record, including claimant's testimony, the findings and opinions of treating and examining physicians, and the opinions of a non-examining state agency medical consultant. (Admin. Tr. 92, Doc. 9-3 at 25). The ALJ determined that, through the date of his decision, Paczkoski retained the RCF to perform a full range of work at all exertional levels, but with nonexertional limitations. (Admin. Tr. 92, Doc. 9-3 at 25). Specifically, the ALJ found that:

> [T]he claimant would be limited to simple, routine tasks, no detailed or complex tasks, performed in a low stress work environment, defined as: occasional decision-making and occasional changes in a work setting. The claimant is limited to no interaction with the general public, working with things rather than people; and only occasional interaction with co-workers, but not in a team-setting, where they would have to interact, performing the job with co-workers, and only occasional interaction with supervisors.

(Admin. Tr. 92, Doc. 9-3 at 25).

Pursuant to Social Security Ruling 96-7p, 1996 WL 374186, the ALJ considered the testimony of Paczkoski (Admin. Tr. 93, Doc. 9-3 at 26) and found that his medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are not supported by the medical evidence, and to the extent that they are inconsistent with the . . . [RFC] assessment." (Admin. Tr. 93, Doc. 9-3 at 26). Paczkoski testified that he had trouble standing,

walking, talking, hearing, remembering, completing tasks, concentrating, and getting along with others. (Admin. Tr. 93, Doc. 9-3 at 26). Paczkoski also testified that he takes care of three young kids, cares for his disabled fiancée, does chores, goes to the store, and can go out in public. (Admin. Tr. 95, Doc. 9-3 at 28). The ALJ found that Paczkoski was "dramatic" in his testimony and written statements and that he "exaggerated the nature and scope of his symptoms and limitations." (Admin. Tr. 95, Doc. 9-3 at 28). The ALJ also noted that Paczkoski's earning records indicate that he had a very poor work history and his motivation to work was questionable. (Admin. Tr. 95, Doc. 9-3 at 28). Paczkoski's inconsistent statements regarding his sobriety were also called into question by the ALJ. (Admin. Tr. 95, Doc. 9-3 at 28).

Pursuant to Social Security Ruling 96-6p, 1996 WL 374180, the ALJ considered a state agency assessment of Paczkoski's RFC prepared by Paul Taren, Ph.D., a state agency medical consultant. (Admin. Tr. 94, Doc. 9-3 at 27). Dr. Taren assessed the severity of Paczkoski's impairments and opined that:

> [T]he claimant had a mild degree of limitation in his activities of daily living, moderate limitations with regard to social functioning, and moderate limitations in maintaining concentration, persistence or pace. [The claimant is] moderately limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods; moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors; and moderately limited in his ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

(Admin. Tr. 94, Doc. 9-3 at 27).

Dr. Taren concluded that Paczkoski was able to carry out simple, routine tasks despite his impairments. (Admin. Tr. 94, Doc. 9-3 at 27). The ALJ gave great weight to the opinion of

Dr. Taren because "it is well-reasoned and is consistent with the other evidence of record when considered in its entirety." (Admin. Tr. 95, Doc. 9-3 at 28).

Pursuant to 20 C.F.R. § 416.927(c), the ALJ considered the medical opinion of Dr. Andrew Newton, M.D., Paczkoski's treating psychiatrist.[2] (Admin. Tr. 93-95, Doc. 9-3 at 26-28). In 2008, Dr. Newton saw Paczkoski for an evaluation in conjunction with a prior application for disability. (Admin. Tr. 93, Doc. 9-3 at 26). Paczkoski told Dr. Newton that he had abstained from alcohol for the past five months, however, he later admitted to ongoing drinking. (Admin. Tr. 93, Doc. 9-3). Paczkoski admitted to abusing marijuana, prescriptive opiate medications, cocaine, and LSD. (Admin. Tr. 93, Doc. 9-3 at 26). Dr. Newton noted that Paczkoski had a history of arrests and parole violations. (Admin. Tr. 93, Doc. 9-3). Dr. Newton diagnosed Paczkoski with continuous alcohol dependency, continuous polysubstance abuse, impulse control disorder (not otherwise specified), and antisocial personality disorder. (Admin. Tr. 93, Doc. 9-3 at 26). Dr. Newton assessed Paczkoski's GAF score at 55 and opined that Paczkoski's ability to understand, remember, and carry out instructions was not affected by his impairments, nor was his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. (Admin. Tr. 93-94, Doc. 9-3 at 26-27). Dr. Newton also indicated

---

[2] A treating source is defined by the Social Security Regulations as any physician, psychologist, or other acceptable medical source that provided the claimant with medical treatment or evaluation as part of an ongoing treatment relationship. 20 C.F.R. § 416.902. An ongoing treatment relationship exists where the claimant sees, or saw, the source with a frequency that is consistent with the accepted medical practice for the type of treatment or evaluation required based on his or her medical conditions. 20 C.F.R. § 416.902. An ongoing treatment relationship does not exist where the claimant's relationship with the medical source is based solely on his or her need to obtain a report in support of a claim for benefits. 20 C.F.R. § 416.902.

that Paczkoski's drug and alcohol impairments contributed significantly to any limitations that Paczkoski might claim. (Admin. Tr. 94, Doc. 9-3 at 27). Since April 2011, Dr. Newton has treated Paczkoski, primarily for impulse control disorder. (Admin. Tr. 94, Doc. 9-3 at 27). Dr. Newton noted Paczkoski to be alert and oriented with mental status essentially within normal limits. (Admin. Tr. 94, Doc. 9-3 at 27). Dr. Newton assessed Paczkoski's GAF score as 60 to 65. (Admin. Tr. 94, Doc. 9-3 at 27). The ALJ gave great weight to Dr. Newton's opinions and GAF scores because "they are consistent with the other evidence when considered in its entirety." (Admin. Tr. 95, Doc. 9-3 at 28).

The ALJ also considered the medical assessments of Dr. Gurdial Singh, M.D., a psychiatrist. (Admin. Tr. 94, Doc. 9-3 at 27). Dr. Singh saw Paczkoski in April 2009, December 2009, July 2010, and August 2010. (Admin. Tr. 94, Doc. 9-3 at 27). In 2009, Dr. Singh diagnosed Paczkoski with intermittent explosive disorder. (Admin. Tr. 94, Doc. 9-3 at 27). In August 2010, Dr. Singh conducted a consultative examination of Paczkoski and noted a history of alcoholism, drug abuse, and vast legal troubles. (Admin. T. 94, Doc. 9-3). Dr. Singh diagnosed Paczkoski with bipolar disorder, type II mixed without psychotic features. (Admin. Tr. 94, Doc. 9-3 at 27). Dr. Singh's assessments were given little weight by the ALJ because "they appear to be based largely on the claimant's subjective complaints and they do not address any specific functional limitations." (Admin. Tr. 95, Doc. 9-3 at 28).

At step four of the five-step process, based on testimony by a VE, the ALJ determined that Paczkoski was unable to perform past relevant work pursuant to 20 C.F.R. 416.965. (Admin. Tr. 95, Doc. 9-3 at 28). At step five of the five-step process, the ALJ determined that, based on Paczkoski's age, education, relevant work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Paczkoski could perform. (Admin. Tr.

9

95-96, Doc. 9-3 at 28-29). The ALJ noted that Paczkoski was 31 years old on the date the application was filed, has at least a high school education, and is able to communicate in English. 20 C.F.R. § 416.963; 20 C.F.R, 416.964. (Admin. Tr. 95, Doc. 9-3 at 28). The VE testified that an individual of Paczkoski's age, education, work history, and RFC would be able to perform the requirements of representative occupations such as a janitor, laundry worker, and dishwasher. (Admin. Tr. 96, Doc. 9-3).

## IV. ANALYSIS

Paczkoski contends that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ improperly evaluated Paczkoski's subjective complaints and discounted his credibility; and (2) the ALJ failed to give appropriate weight to the opinions of Paczkoski's treating and examining physicians.

### A. CREDIBILITY ASSESSMENT

Paczkoski contends that the ALJ's credibility assessment is unsupported by substantial evidence. An ALJ is required to give "serious consideration" to a claimant's subjective complaints, Mason, 994 F.2d at 1067, and give some indication of the evidence which she rejects and her reasons for discounting such evidence. Burnett, 220 F.3d at 122.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> SSR 96-7p, 1996 WL 374186.

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 416.929. Under the regulations, first, symptoms, such as pain or fatigue, will be considered to affect a claimant's ability to perform work activities only if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 416.929(b); SSR 96-4p, 1996 WL 374187. Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 416.929(c). SSR 96-4p, 1996 WL 374187. In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 416.929(c). This requires that the ALJ determine the extent to which the claimant is accurately stating the degree of his or her symptoms and the extent to which these symptoms are disabling.

> SSR 96-4p, 1996 WL 374187, provides that:
>
> Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s).

Here, the ALJ found that Paczkoski's medically determinable impairments could be reasonably expected to cause his symptoms. However, the ALJ concluded that Paczkoski's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely credible based on the objective medical evidence. (Admin Tr. 93, Doc. 9-3 at 26). Paczkoski argues that the ALJ did not properly evaluate his subjective complaints of physical impairments and non-exertional mental impairments as well as make a proper credibility

11

determination. (Doc. 10 at 2-3). Specifically, Paczkoski argues that the ALJ did not consider that he cannot be around people; suffers from constant low back pain, migraine headaches, and asthma; and he has trouble standing, walking talking, hearing, remembering, completing tasks, concentrating and getting along with others. (Doc. 10 at 3-4).

The ALJ cited to specific instances where Paczkoski's symptoms were inconsistent with his own descriptions of his daily activities. *See Hartranft v. Apfel*, 181 f.3d 358, 362 (3d Cir. 1999) (finding that an ALJ's adverse credibility assessment was supported by substantial evidence where the ALJ cited instances where the claimant's subjective complaints were inconsistent with the objective medical evidence of record and the claimant's description of his daily activities). Specifically, the ALJ noted that in Paczkoski's statements and testimony he exaggerated the nature and the scope of his symptoms and limitations. (Admin Tr. 95, Doc. 9-3 at 28). Although Paczkoski alleges that he has little ability to do anything, the ALJ noted that he cares for three young children and helps take care of his girlfriend/fiancée who is reportedly disabled. Further, despite Paczkoski's statement that he cannot work because "I do not like to be around people" (Admin Tr. 46; Doc. 10 at 3), the ALJ noted that Paczkoski does chores, goes to the store, and can go out in public. (Admin Tr. 95, Doc. 9-3 at 28). The ALJ also noted that Paczkoski performs chores around the house, does laundry, prepares meals, does the shopping, plays video games, watches television, and reads. (Admin Tr. 52-53, 91, 181-85). Additionally, the ALJ noted that Paczkoski has a very poor work history and his motivation to work is questionable. (Admin Tr. 95, Doc. 9-3 at 28). The ALJ relied on Paczkoski's earnings record that showed a "sparse and sporadic" work history." (Admin Tr. 95, Doc. 9-3 at 28). Moreover, the ALJ noted that Paczkoski made inconsistent reports regarding his sobriety. (Admin Tr. 95, Doc. 9-3 at 28).

Furthermore, the ALJ found that Paczkoski's claims of disabling limitations due to asthma, headaches, back pain, and mental impairments were inconsistent with objective medical evidence and treatment history. (Admin Tr. 89-90, 92-95, Doc. 9-3). With respect to Paczkoski's asthma and headaches, the ALJ noted that the medical evidence indicated that these symptoms caused no more than a minimal degree of functional limitations (Admin Tr. 89, Doc. 9-3 at 22), and the ALJ noted that Paczkoski continues to smoke a pack of cigarettes a day. (Admin Tr. 293, 371, Doc. 9-8). The ALJ further noted that Paczkoski did not seek regular treatment for asthma during the relevant period and never required emergency treatment for the asthma, used the inhaler on an "as-needed" basis, and an examination of Paczkoski's chest and lungs was normal. (Admin Tr. 89, Doc. 9-3 at 22). With respect to the headaches, Paczkoski sought limited treatment, there is no indication that he suffered from headaches since his application date that have caused him more than a minimal degree of limitation, and the headaches are under control with medication. (Admin Tr. 89, Doc. 9-3 at 22). With regard to Paczkoski's allegations of back pain, the ALJ found that the medical evidence was inconsistent with Paczkoski's allegations because an MRI of Paczkoski's lumbar spine showed no significant abnormalities, and EMG and nerve conduction studies were normal. (Admin Tr. 89, Doc. 9-3 at 22). Further, Paczkoski received conservative routine treatment involving medication and nerve blocks to control any pain. (Admin Tr. 368-69, Doc. 9-8). With respect to Paczkoski's alleged mental impairments, the ALJ found that they imposed only mild to moderate functional limitations, they did not preclude him from working, and that he has received treatment for bipolar and impulse control disorders. (Admin Tr. 93-95, Doc. 9-3 at 26-28).

Accordingly, the Court finds that the ALJ's determination that Paczkoski's subjective complaints were not credible is well-explained and supported by substantial evidence in the

evidentiary record. The ALJ's summary includes a characterization of Paczkoski's testimony regarding his daily activities, his subjective descriptions of his alleged limitations, and a discussion of his medical treatment. The ALJ also summarized the opinions and findings of Paczkoski's treating, examining, and reviewing physicians and psychiatrists. The ALJ concluded that the record, viewed as a whole, suggested that Paczkoski was capable of functioning at a much higher level than was reflected by his subjective complaints. As such, the Court finds that the ALJ's determination that Paczkoski's testimony was not credible is supported by substantial evidence.

### B. WEIGHT OF MEDICAL OPINIONS

Paczkoski asserts that the ALJ impermissibly assigned more weight to the opinion of the state agency psychologist, Dr. Taren, than the opinions of his treating physician, Dr. Newton, and his examining physician, Dr. Singh. (Doc. 10 at 5-6). Paczkoski also asserts that the ALJ gave no weight to the opinion of Dr. Mahmood Nasir, a treating pain management physician and neurologist.

#### 1. Weight Given to Opinion of Dr. Newton

It is well-established that "a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)); 20 C.F.R. § 416.927(d)(2) (providing for controlling weight where a treating physician's opinion is well-supported by medical evidence and not inconsistent with other medical evidence in the record). Finding that the medical opinion of a treating source is

not entitled to controlling weight does not mean that the opinion should be rejected. SSR 96-2p, 1996 WL 374188, at *4. In many cases, a treating source's non-controlling medical opinion will be entitled to deference, and must be weighed using the factors provided in 20 C.F.R. § 416.927. SSR 96-2p, 1996 WL 374188, at *4.

To be a "medical opinion" entitled to "controlling weight" an opinion must come from a "treating source," it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it must be "not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 416.927(a)(2); 20 C.F.R. § 416.927(c)(2); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2. Under the Social Security regulations, a "treating source" is defined as a "physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902. As to what constitutes an "ongoing treatment relationship," the regulation states:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. § 416.902.

Here, Paczkoski argues that Dr. Newton was his treating physician, and thus, under the applicable regulations, his medical opinion was entitled to controlling weight. Contrary to Paczkoski's assertions, the ALJ gave Dr. Newton's assessments, including the GAF scores, great weight and noted that they were consistent with the other evidence when considered in its

entirety. (Admin Tr. 95, Doc. 9-3 at 28). Beginning in April 2011, Paczkoski was treated by Dr. Newton. (Admin Tr. 94, 9-3 at 27). Between April 2011 and September 2011, Paczkoski saw Andrew Newton, M.D., primarily for impulse control disorder, and was treated with Tripletal, Celexa, and Ambien. (Admin Tr. 349-62, Doc. 9-8). Dr. Newton noted the claimant to be alert and oriented with mental status essentially within normal limits. (Admin Tr. 94, Doc. 9-3 at 27). Dr. Newton assigned Paczkoski a global assessment of functioning score ("GAF") of 65[3] in March 2011, July 2011, and August 2011. (Admin Tr. 357-59, Doc. 9-8). In September 2011, Dr. Newton assigned Paczkoski a GAF score of 60. (Admin Tr. 356, Doc. 9-8). The ALJ afforded Dr. Newton's assessments of Paczkoski, including the GAF scores, great weight. (Admin Tr. 95, Doc. 9-3 at 28).

Similarly, the ALJ gave great weight to Dr. Taren's opinion evidence because, as the ALJ noted, it was well-reasoned and consistent with the other evidence of record. (Tr. 95, Doc. 9-3 at 28). The ALJ noted that Dr. Taren opined that the claimant had a mild degree of limitation in his activities of daily living, moderate limitations with regard to social functioning,

---

[3] **Error! Main Document Only.** A GAF score of 21-30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed., text rev., Am. Psychiatric Ass'n 2000). A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.* A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *Id.* A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. *Id.* A GAF score of 61-70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. *Id.* A GAF score of 71-80 represents transient symptoms, if present, and expectable reactions to psychosocial stressors or no more than slight impairment in social, occupational, or school functioning. *Id.*

and moderate limitations in maintaining concentration, persistence, or pace. (Tr. 94, Doc. 9-3 at 27). Dr. Taren concluded that the claimant is able to carry out simple, routine tasks despite the limitations resulting from his impairments. (Tr. 94, Doc. 9-3 at 27). Both Dr. Taren and Dr. Newton's opinions and assessments of Paczkoski are consistent with one another. Thus, based on the record, it is clear that the ALJ assessed and afforded great weight to the opinions of both Dr. Taren and Dr. Newton; thus, contrary to Paczkoski's assertion, the ALJ did not afford greater weight to Dr. Taren than he did Dr. Newton.

### 2. Weight Given to Opinion of Dr. Singh

With respect to Dr. Singh, the ALJ afforded Dr. Singh's assessments little weight because they were largely based on Paczkoski's subjective complaints and did not address any specific functional limitations. (Admin Tr. 95, Doc. 9-3 at 28). Dr. Singh did not opine that Paczkoski had any specific functional limitations or that he was disabled. (Admin Tr. 321-22, Doc. 9-8). Thus, there was no opinion of functionality by Dr. Singh that the ALJ could weigh. The ALJ did consider Dr. Singh's notes and acknowledged that Dr. Singh diagnosed Paczkoski with bipolar disorder. (Admin Tr. 94, Doc. 9-3 at 27).

An ALJ may discount a medical opinion where it was premised entirely on a claimant's own subjective complaints. *See Morris v. Barnhart*, 78 Fed. Appx. 820, 824-25 (3d Cir. 2003) (finding that an ALJ may discount a medical opinion where that opinion was premised on a claimant's own subjective complaints when the claimant's complaints are properly discounted). Further, Dr. Singh only saw Paczkoski four times in total, and only twice during the relevant period. *See Morris v. Barnhart*, 78 Fed. Appx. 820, 823 (3d Cir. 2003) (finding opinion of psychiatrist who saw claimant "on only three or four occasions over two or three months" was not entitled to presumption of controlling weight under treating physician rule); *Shore v. Colvin,*

17

No. 12-00441, 2013 WL 5439142, at *14 (M.D. Pa. Sept. 27, 2013) (finding the opinion of a consulting physician who only had contact with the claimant on one occasion was not entitled to controlling weight nor more weight than the opinion of a state agency physician which was based on review of the claimant's medical records).

Even though Dr. Singh's opinion is not a treating source medical opinion entitled to controlling weight, his opinion is nevertheless relevant evidence that must be considered and weighed by the ALJ. *See* 20 C.F.R. § 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored."); Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *7 n.8; *Ray v. Astrue*, 649 F. Supp. 2d 391, 402 n.26 (E.D. Pa. 2009) ("Evidence that does not deserve great weight does not necessarily deserve no weight at all."). Pursuant to 20 C.F.R. § 416.927(c), non-controlling medical, and "other," opinion evidence must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.1527(c)(2)–(5); *see also* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3. None of these factors may be omitted or disregarded by the ALJ in considering the weight of the opinion. *See Casillas v. Astrue*, 671 F. Supp. 2d 635, 643–44 (E.D. Pa. 2009). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. §§ 416.927(c)(6).

In determining the amount of weight to give to Dr. Singh's opinion, the ALJ here articulated her consideration of factors (1) and (2), expressly referencing the fact that Dr. Singh's opinion was based on a consultative examination in August 2010 and three prior visits.

(Admin. Tr. 94, Doc. 9-3 at 27). With respect to factor (3), the ALJ's decision references Paczkoski's treatment records at Dr. Singh's medical practice, and her detailed summary of Dr. Singh's findings indicates her full consideration of the medical evidence upon which the opinion was based. (Admin. Tr. 94, Doc. 9-3 at 27). With respect to factor (4), the ALJ's decision documents her consideration of Dr. Singh's opinion with the record as a whole, and found that the assessment was based almost exclusively on the claimant's subjective complaints and that Dr. Singh did not address specific functional limitations. (Admin. Tr. 94-95, Doc. 9-3 at 27-28). With respect to factor (5), the ALJ's decision references Dr. Singh's medical examination (Exhibit B-10F), labeled "psychiatric consultation" which specifically notes that Dr. Singh is a psychiatrist. (Admin. Tr. 49, Doc. 9-3 at 27; Admin. Tr 289-91, Doc. 9-7).

Dr. Singh's findings were inconsistent with Paczkoski's treating physician, Dr. Newton, who assessed that Paczkoski had only mild to moderate mental function limitations. (Tr. 356-58, 362, 365). As long as the ALJ's conclusion is supported by substantial evidence, an opinion's inconsistency with the record as a whole is a proper basis for according less weight to the opinion of a treating medical source. *See* SSR 96-2p, 1996 WL 374188; *see also Plummer,* 186 F.3d at 429 (finding that where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."). Accordingly, the Court finds that there is substantial evidence in the administrative record to support the ALJ's finding that Dr. Singh's opinion was entitled to "little weight," and the ALJ's determination of the weight given to Dr. Singh's opinion was adequately explained.

### 3. Weight Given to Dr. Nasir

Paczkoski argues that the ALJ "practically dismissed" the treatment notes of Dr.

Mahmood Nasir. Dr. Nasir diagnosed Paczkoski with migraines, mood swings, depression, third degree sprain to the right ankle, bilateral carpal tunnel syndrome, umber spondylosis, neuropathy in both legs and neck pain and numbness in both hands. (Admin Tr. 363-379, Doc. 9-8). However, Dr. Nasir did not offer any opinion on Paczkoski's functional limitations. (Admin Tr. 367-75). The ALJ did consider Dr. Nasir's treatment notes and acknowledged that Paczkoski received treatment for his back. The ALJ noted that the treatment was relatively recent (June - August 2011 as compared to his July 2010 application); that a June 2011 MRI of Paczkoski's lumbar spine revealed no significant abnormality; and EMG and nerve conduction studies of his lower extremities were normal. (Admin Tr. 89, Doc. 9-3 at 22). The ALJ concluded that, based on this, the claimant's dextroscoliosis and back pain were non-severe. Thus, the Court finds that the ALJ's discounting Dr. Nasir's treatment notes is supported by substantial evidence.

V.   **CONCLUSION**

Based on the foregoing, the Commissioner's decision shall be **AFFIRMED**. An appropriate Order shall follow.

Dated: September 4, 2014                                *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States Magistrate Judge**